# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| DE'MARCUS THOMAS | CIVIL ACTION |
| VERSUS | |
| WALLACE, RUSH, SCHMIDT, INC. | NO.: 16-572-BAJ-RLB |

## RULING AND ORDER

Before the Court in this wage-and-hour dispute are the **Motions (Docs. 112, 113, 114, 115)** of Wallace, Rush, Schmidt and D&A Enterprises to dismiss, in part, Plaintiff De'Marcus Thomas's claims and to strike the class-action allegations of his fourth amended complaint. For the reasons that follow, the **Motions for Partial Dismissal (Docs. 112, 115) are GRANTED IN PART** and **DENIED IN PART** and the **Motions to Strike (Docs. 113, 114) are GRANTED**.

## I. BACKGROUND

This dispute arises from a company's alleged failure to pay laborers for work they performed following the August 2016 flooding in Baton Rouge, Louisiana.

De'Marcus Thomas sued Wallace, Rush, Schmidt and D&A Enterprises for violating the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201–219, defrauding him, breaching an employment contract, and negligently failing to keep payroll records. (Doc. 105). He purports to allege collective-action claims under § 216(b) of

1

the FLSA, and he seeks to certify a Federal Rule of Civil Procedure 23 class under an unspecified Rule 23(b) subpart. (*Id.*).

## A. Procedural History

Before turning to the allegations of Thomas's latest complaint, the Court addresses the history of this case, one of the oldest on its docket. Thomas filed this suit in August 2016—over 2 years and 9 months ago. (Doc. 1). The case proceeded without issue until March 2017, when Wallace, Rush, Schmidt notified the Court that it had filed for bankruptcy protection. (Doc. 40). The Court responded by staying the case. (Doc. 42). The Court lifted the stay in October 2018, on Thomas's motion and following the bankruptcy court's entry of an order lifting the stay to allow the case to "immediately proceed . . . in the Middle District of Louisiana." (Doc. 45).

After the Court lifted the stay, Wallace, Rush, Schmidt moved to dismiss Thomas's claims and to strike his class-action allegations. (Docs. 53, 54). The Court granted the motion to dismiss, in part, and granted the motion to strike, in full. (Doc. 104). The Court explained how Thomas's complaint was deficiently pleaded and granted him leave to amend certain claims.[1] (*Id.*). He amended—for the fourth time. (Doc. 105).

## B. Fourth Amended Complaint

The claims Thomas attempts to allege in his latest complaint resemble those he attempted to allege in his last one. (Docs. 51, 105). His fourth amended complaint

---

[1] The Court dismissed the unjust-enrichment claim with prejudice. (Doc. 104 at p. 8).

2

attempts to allege (1) individual and collective-action claims for violations of the FLSA; (2) individual and class-action claims for violations of the Louisiana Wage Payment Law, LA. R.S. 23:631; (3) individual and class-action claims for breach of contract; (4) individual and class-action claims for detrimental reliance; (5) individual and class-action claims for fraud; and (6) individual and class-action claims for negligence. (Doc. 105).

### 1. Factual Allegations

The factual allegations of Thomas's latest complaint resemble those of his prior complaints. (Docs. 1, 15, 20, 51, 105).

Consider his "employers." Thomas alleges that Wallace, Rush, Schmidt is a "[n]atural [d]isaster [c]leanup and [r]ecovery personnel resource management company specializing in job management and labor services for disaster restoration companies." (Doc. 105 at ¶ 12). D&A Enterprises, Thomas alleges, is a Servpro Industries, Inc. franchise that "used [Wallace, Rush, Schmidt's] services to recruit laborers to perform work related to the flooding event that occurred in [s]outheast Louisiana in August of 2016." (*Id.* at ¶ 15). Thomas alleges that D&A Enterprises agreed to pay Wallace, Rush, Schmidt to "hire and recruit" more than "1,500 employees to perform disaster restoration for the Baton Rouge flood project." (*Id.* at ¶ 16).

Consider the "disaster restoration" project. Thomas alleges that he worked as a laborer for "Defendants" on two job sites—the Baker Dialysis Center and the Amite High School—for a two-week period in August 2016. (*Id.* at ¶¶ 44–45, 56). He alleges

3

that "Defendants" hired him "to do work that is largely physical in nature" in 12-hour shifts at $12 per hour. (*Id.* at ¶¶ 45–46).

Consider the "nonpayment." Thomas alleges that "Defendants" told him that he would be paid regular and overtime wages "every Friday." (*Id.* at ¶ 105). He alleges that "Defendants" told him to visit a "check-in site" to receive payment on three mornings, but "Defendants" never paid him. (*Id.* at ¶¶ 65–77). And he alleges, "[u]pon information and belief," that "Defendants" have "a pattern and practice of refusing to pay their employees." (*Id.* at ¶ 39). He alleges that this nonpayment caused him to quit working for "Defendants" on August 27, 2016—two days before he filed this suit. (*Id.* at ¶ 73).

### 2. Class Definition

Thomas's class definition has changed.[2] (Docs. 51, 105). He proposes a Rule 23 class and a collective-action class defined as follows:

> All persons who were or are currently employed by WRS and/or Servpro of Fort Collins in the State of Louisiana from July of 2016 to July of 2017 who were hired to perform Manual Labor in connection with the flooding event that occurred on or about August of 2016 in the greater Baton Rouge, Louisiana region/area. Manual Labor is defined as any labor related work pertaining to physical labor tasks such as site demolition, removing drywall, removing insulation, removing and/or remediating flooring, removing and/or disposing of trash, and/or any other flood related remediation and demolition activities which involve manual labor. These class members may have had additional duties that were not Manual Labor in nature, but Manual Labor was the primary job

---

[2] Initially, Thomas defined the putative class to include "all persons who were, are, or will be employed by [Wallace, Rush, Schmidt] *throughout the country* during applicable statutes of limitations, who have not been compensated for regular wages and/or [overtime][.]" (Doc. 1 at ¶ 33) (emphasis added). Thomas later limited the definition of the putative class to Wallace, Rush, Schmidt's Louisiana employees. (Docs. 15 at ¶ 71; 20 at ¶ 71; 51 at ¶ 75).

4

function in their duties. Plaintiffs and the members of the Plaintiff Class are similarly situated in that they were hired to perform Manual Labor, as defined above, following the flooding event that occurred on or about [*sic*] in August of 2016 in the greater Baton Rouge, Louisiana region/area on an hourly basis for the same rate of pay for the Defendants in the above specified time period. To be eligible to be class members, said workers must have not been compensated for regular wages and/or have not been compensated the overtime rate of one and one-half (1¹ᐟ²) times the regular rate of pay for all work performed in excess of forty (40) hours per work week, and for any worker for which Defendants WRS and Servpro failed to maintain and preserve payroll records or other records, containing, without limitation, the total hours worked by each class member each workday and total hours worked by each class member each workweek.

(Doc. 105 at ¶¶ 79, 87).

### 3. Collective-Action Allegations

Thomas purports to allege FLSA collective-action claims on behalf of the class described above. (Doc. 105 at ¶¶ 78–85). He alleges that he and the members of his proposed class "were together the victims of Defendant's[3] improper policies and practices of failing to keep accurate payroll records and failing to pay regular wages and overtime." (*Id.* at ¶ 81). He alleges that members of the proposed class are situated similarly to him because (1) "they were recruited by [Wallace, Rush, Schdmit] to provide disaster restorative services" in Louisiana (*Id.* at ¶ 82); (2) "they were given job assignments by [Wallace, Rush, Schmidt], directed by job site supervisors from [Wallace, Rush Schmidt] and [D&A Enterprises] as to the specific service to be performed"; and (3) "they all advance similar claims of not being compensated for regular wages and/or overtime wages[.]" (*Id.* at ¶ 83). He also alleges

---

[3] It is not clear which "Defendant" Thomas is referencing.

5

that he spoke with "numerous" laborers who said that "Defendant" failed to pay them for "similar work." (*Id.*).

### 4. Class-Action Allegations

Thomas purports to allege class-action claims on behalf of the class described above. (Doc. 105 at ¶¶ 78–85). He fails, however, to specify the type of class. (*Id.*). He cites Rule 23(b)(2), the provision governing equitable-relief classes, in a single paragraph. (*Id.* at ¶ 99). But that provision cannot apply: Thomas predominantly requests money damages—not equitable relief.[4] (*Id.* at pp. 24–25). Accordingly, his fourth amended complaint requires the Court to guess the type of class he intends to certify. (*Id.* at ¶¶ 78–85).

Thomas gestures toward the Rule 23(a) requirements. (*Id.*). He alleges that the numerosity requirement is met because "there are at least 1,500 members of the putative class." (*Id.* at ¶ 90). That figure, though, represents the workers "Defendants" allegedly *employed*; it does not represent the number of workers "Defendants" allegedly *failed to pay*. (*Id.*). So the allegation does not speak to numerosity. (*Id.*). Thomas also alleges that "putative class members were hired to perform work across the State of Louisiana—not just one defined area." (*Id.* at ¶ 90). That allegation is perplexing considering the geographic scope of the class Thomas has defined—a class comprising persons hired to perform "manual labor" in "the

---

[4] A court cannot certify a Rule 23(b)(2) class if money-damages claims predominate. *See Yates v. Collier*, 868 F.3d 354, 366 (5th Cir. 2017).

6

greater Baton Rouge, Louisiana region/area." (*Id.* at ¶¶ 79, 87). Moving to the other Rule 23(a) requirements, Thomas alleges that he "will fairly and adequately represent and protect the interests" of putative class members (*Id.* at ¶ 95) and that "[t]here are questions of law or fact common" to the proposed class. (*Id.* at ¶ 93).

Contending that these allegations do not suffice, Wallace, Rush, Schmidt and D&A Enterprises move to (1) dismiss Thomas's collective-action, detrimental-reliance, fraud, and negligence claims for failure to state a claim and (2) strike his class-action allegations. (Docs. 112, 115). Thomas opposes. (Docs. 117, 120, 121).

## II. MOTIONS TO DISMISS

### A. Legal Standard

To overcome the motions to dismiss, Thomas must plead plausible claims for relief. *See Romero v. City of Grapevine, Tex.*, 888 F.3d 170, 176 (5th Cir. 2018) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A claim is plausible if it is pleaded with factual content that allows the Court to reasonably infer that Defendants are liable for the misconduct alleged. *See Edionwe v. Bailey*, 860 F.3d 287, 291 (5th Cir. 2017) (citing *Iqbal*, 556 U.S. at 678). The Court accepts as true the well-pleaded facts of Thomas's fourth amended complaint and views those facts in the light most favorable to him. *See Midwest Feeders, Inc. v. Bank of Franklin*, 886 F.3d 507, 513 (5th Cir. 2018).

B.  Analysis

1.  **Collective Action**

The FLSA sets wage, hour, and overtime standards. *See* 29 U.S.C. §§ 206, 207(a). If an employer violates these standards, an employee may sue on behalf of himself and "other employees similarly situated." 29 U.S.C. § 216(b). Such a suit is called a collective action. *See Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 69 (2013).

Some courts hold that it is improper to challenge a collective action by Rule 12 motion. *See, e.g., Robinson v. R&L Carriers Payroll, LLC*, No. H-17-1762, 2018 WL 1033256, at *2 (S.D. Tex. Feb. 20, 2018). This Court holds otherwise. *See Creech v. Holiday CVS, LLC*, No. 11-CV-46-BAJ-DLD, 2012 WL 4483384, at *3 (M.D. La. Sept. 28, 2012).

To plead a plausible collective-action claim, Thomas must allege facts sufficient to provide Wallace, Rush, Schmidt and D&A Enterprises "fair notice of the putative class." *Flores v. Act Event Servs., Inc.*, 55 F. Supp. 3d 928, 940 (N.D. Tex. 2014). His factual allegations must also establish that a "similarly situated" collective-action class exists. *See Creech*, 2012 WL 4483384, at *2.

Wallace, Rush, Schmidt and D&A Enterprises argue that Thomas's class definition fails to provide "fair notice" because it is vague and overbroad. (Docs. 112-1, 115-1). Thomas rejoins that his definition is tailored appropriately, and he insists that his latest definition corrects the deficiencies the Court identified in its Ruling and Order. (Docs. 117, 121). The Court disagrees.

8

Thomas's class definition fails the "fair notice" standard. At 280 words, it is more confusing that the one that preceded it. (*Id.*). It includes laborers who worked for (1) Wallace, Rush, Schmidt only, (2) D&A Enterprises only, and (3) Wallace, Rush, Schmidt and D&A Enterprises. (*Id.*). It defines a term needing no definition—"manual labor"—to include "labor related work pertaining to physical labor tasks." (*Id.*). And it concludes with a dependent clause bearing no clear relation to the preceding text. (*Id.*) (" . . . for any worker for which Defendants WRS and Servpro failed to maintain and preserve payroll records . . ."). Worse still, in referencing "Servpro," the clause introduces an apparently unrelated entity into an already jumbled definition. (*Id.*). As D&A Enterprises explains, "Servpro" is elsewhere defined as "Servpro Industries, Inc.," D&A Enterprises' franchisor. (*Id.* at ¶¶ 14–15). It is altogether unclear who, exactly, the definition covers.[5] The Court therefore grants Wallace, Rush, Schmidt's and D&A Enterprises' motions and dismisses Thomas's collective-action claims *with* prejudice.[6]

### 2. Detrimental Reliance

Thomas purports to allege detrimental-reliance claims against Wallace, Rush, Schmidt and D&A Enterprises. (Doc. 105 at ¶¶ 131–147). Civil Code Article 1967

---

[5] Besides amending his complaint, Thomas has done nothing to move this case forward as a collective action. The Court finds it significant that Thomas has not moved to conditionally certify a collective-action class since the Court's December 20, 2018 Order (Doc. 57) denying, without prejudice, his initial motion for conditional certification.

[6] Thomas has amended his complaint four times. (Docs. 15, 20, 51, 105). He has had a fair opportunity to "plead his best case." *Bosarge v. Miss. Bureau of Narcotics*, 796 F.3d 435, 444 (5th Cir. 2015).

governs such claims and instructs that "[a] party is obligated by a promise when he knew or should have known that the promise would induce the other party to rely on it to his detriment and the other party was reasonable in so relying." LA. CIV. CODE art. 1967.

Detrimental reliance "is designed to prevent injustice by barring a party from taking a position contrary to his prior acts, admissions, representations, or silence." *Luther v. IOM Co.*, 2013-0353, p. 10 (La. 10/15/13); 130 So. 3d 817, 825. Louisiana law "does not favor recovery under a detrimental-reliance theory." *Koerner v. CMR Constr. & Roofing, L.L.C.*, 910 F.3d 221, 232 (5th Cir. 2018) (citing *Albritton v. Lincoln Health Sys., Inc.*, 51 So. 3d 91, 95 (La. Ct. App. 2010)). The theory "usually functions when no written contract or an unenforceable contract exists between the parties." *Drs. Bethea, Moustoukas and Weaver LLC v. St. Paul Guardian Ins. Co.*, 376 F.3d 399, 403 (5th Cir. 2004). That is because "reliance on promises made outside of an unambiguous, fully-integrated agreement" is "unreasonable as a matter of law." *Id.* at 404.

To plead a plausible detrimental-reliance claim, Thomas must allege (1) a promise, (2) made in such a manner that the promisor should have expected Thomas to rely on it, (3) justifiable reliance, and (4) a change in position to Thomas's detriment. *See Koerner*, 910 F.3d at 231–32. He does so.

Thomas alleges that "Defendants" promised to pay him regular and overtime wages. (Doc. 105 at ¶ 133). He alleges that "Defendants" made the promise at least twice: first, through a "representative" in a "parking lot"; second, through

10

"management when payment issues arose." (*Id.* at ¶ 141). And he alleges that he experienced a detrimental change in position because "Defendants'" misconduct "precluded [him] from accepting other work," causing him to "los[e] income" and "employment opportunities." (*Id.* at ¶ 133). These allegations, viewed in his favor and taken as true, suffice to state a detrimental-reliance claim. Thomas's fourth amended complaint makes clear that he had no written employment contract with Wallace, Rush, Schmidt or D&A Enterprises; so his alleged reliance on oral promises was not unreasonable as a matter of law. *See Drs. Bethea, Moustoukas and Weaver LLC*, 376 F.3d at 403.

### 3. Fraud

Thomas purports to allege fraud claims against Wallace, Rush, Schmidt and D&A Enterprises. (Doc. 105 at ¶¶ 148–162). Fraud is "a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other." LA. CIV. CODE art. 1953. It may "result from silence or inaction." *Id.*

To plead a plausible fraud claim, Thomas must allege that "'(1) a misrepresentation of material fact, (2) made with the intent to deceive, (3) caused justifiable reliance with resultant injury.'" *Koerner*, 910 F.3d at 230 (quoting *Becnel v. Grodner*, 982 So. 2d 891, 894 (La. Ct. App. 2008)).[7]

---

[7] Wallace, Rush, Schmidt argues, incorrectly, that Louisiana law does not recognize fraud as an independent tort. (Doc. 112-1 at p. 13). It does. *See, e.g., Guidry v. U.S. Tobacco Co.*, 188 F.3d 619, 626–627 (5th Cir. 1999);

Beyond alleging the elements of fraud, Thomas "must state with particularity the circumstances constituting fraud[.]" FED. R. CIV. P. 9(b). So doing requires Thomas to "plausibly plead facts establishing the time, place, and contents of the false representation, as well as the identity of the person making the misrepresentation and what the person obtained thereby." *IAS Servs. Grp., L.L.C. v. Jim Buckley & Assocs., Inc.*, 900 F.3d 640, 647 (5th Cir. 2018) (citation omitted). "This Circuit's precedent interprets Rule 9(b) strictly[.]" *Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*, 565 F.3d 200, 207 (5th Cir. 2009).

Thomas fails to plead plausible fraud claims. (Doc. 105 at ¶¶ 148–162). He again fails to allege the person who made the fraudulent statement or the time or place the statement was made. (*Id.*). His allegations thus fail to satisfy Rule 9(b)'s particularity requirement. *See Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003) ("Put simply, Rule 9(b) requires the who, what, when, where, and how to be laid out."). The Court therefore grants Wallace, Rush, Schmidt's and D&A Enterprises' motions and dismisses Thomas's fraud claims *with* prejudice.[8]

### 4. Negligence

Thomas alleges that Wallace, Rush, Schmidt and D&A Enterprises negligently failed to (1) compensate him for regular and overtime work and (2) "maintain and preserve payroll records[.]" (Doc. 105 at ¶¶ 148–162). D&A Enterprises moves to

---

[8] Thomas has amended his complaint four times. (Docs. 15, 20, 51, 105). He has had a fair opportunity to "plead his best case." *Bosarge*, 796 F.3d at 444.

dismiss this claim on the ground that Thomas lacks standing to sue for record-keeping violations.[9] (Doc. 115-1 at p. 8).

Thomas did not respond to D&A Enterprises' challenge to his negligence claim. (Doc. 121). Accordingly, Thomas has abandoned the claim. *See Tex. Capital Bank N.A. v. Dallas Roadster, Ltd.*, 846 F.3d 112, 126 (5th Cir. 2017) (citing *Black v. North Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006)). The Court therefore grants D&A Enterprises' motion to dismiss Thomas's negligence claim and dismisses the claim *with* prejudice.

## III. MOTIONS TO STRIKE

### A. Legal Standard

The Court has an "independent obligation to decide whether an action [is] properly brought as a class action[.]" *McGowan v. Faulkner Concrete Pipe Co.*, 659 F.2d 554, 559 (5th Cir. 1981). To fulfill that obligation, the Court may apply Rule 23(d)(1)(D) to strike class-action allegations that fall short of Rule 23's requirements. *See Coleman v. Sears Home Improvement Prods., Inc.*, No. 16-2537, 2017 WL 1064965, at *7 (E.D. La. Mar. 20, 2017) (striking deficient class-action allegations); *Aguilar v. Allstate Fire and Cas. Ins. Co.*, No. 06-4660, 2007 WL 734809, at *2 (E.D. La. Mar. 6, 2007) (same).

---

[9] Wallace, Rush, Schmidt did not move to dismiss Thomas's negligence claim. (Doc. 112).

B.  Analysis

Thomas's fourth amended complaint fails to identify the type of class he hopes to certify. (Doc. 115). The only class-action provision he cites is Rule 23(b)(2); that provision cannot apply because he predominantly requests money damages—not equitable or injunctive relief. *See Yates*, 868 F.3d at 366. Because Thomas recites some language drawn from Rules 23(b)(1) and 23(b)(3), the Court assumes that he seeks to certify a class under either or both of those provisions. (Doc. 115 at ¶¶ 98–101).[10] So he must plead facts satisfying the "threshold requirements" of Rule 23(a) and the specific requirements of Rules 23(b)(1) or 23(b)(3). *See, e.g., See Maldonado v. Ochsner Clinic Foundation*, 493 F.3d 521, 523 (5th Cir. 2007) (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 613–614 (1997)). The Court turns first to Rule 23(a).

1.  Numerosity

Rule 23(a)(1) requires that the putative class be "so numerous that joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1). To satisfy this requirement, "a plaintiff must ordinarily demonstrate some evidence or reasonable estimate of the number of purported class members.'" *Ibe v. Jones*, 836 F.3d 516, 528 (5th Cir. 2016) (quoting *Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030, 1038 (5th Cir. 1981)). But "'the number of members in a proposed class is not determinative of whether joinder is impracticable.'" *Ibe*, 836 F.3d at 528 (quoting *In re TWL Corp.*, 712 F.3d 886, 894 (5th Cir. 2013)). Other considerations include "the geographical dispersion

---

[10] In his response papers, Thomas states that he seeks to certify a class under Rules 23(b)(1) and 23(b)(3). (Doc. 120 at p. 4).

14

of the class, the ease with which class members may be identified, the nature of the action, and the size of each plaintiff's claim." *Ibe*, 836 F.3d at 528 (citation omitted).

Thomas fails to allege facts sufficient to show numerosity. (Doc. 105). He alleges that the putative class consists of "at least 1,500 workers" employed after the August 2016 flooding. (*Id.* at ¶ 90–91). But that figure represents the number of workers "Defendants" employed; it does not represent the number of workers "Defendants" failed to pay. (*Id.*). Thomas alleges no facts to support the conclusion that the putative class consists of "at least 1,500" workers. (*Id.*).

Also absent is any factual allegation that supports the conclusion that joinder is impracticable on geographical grounds. (*Id.*). Granted, Thomas alleges that "putative class members were hired to perform work across the State of Louisiana." (Doc. 105 at ¶ 90). But he later defines the putative class to include only persons hired to perform "manual labor" in "the greater Baton Rouge, Louisiana region/area." (Doc. 105 at ¶¶ 79, 87). The geographical dispersion of this class is, at best, unclear.

Because Thomas's allegations do not reveal the size or geographical dispersion of the putative class, Thomas fails to allege facts sufficient to satisfy Rule 23(a)(1)'s numerosity requirement.

### 2. Commonality

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." The Supreme Court has interpreted Rule 23(a)(2) to require that the claims of putative class members "depend upon a common contention" that is "of such a nature

that it is capable of class-wide resolution[.]" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).[11]

Thomas fails to allege facts sufficient to show commonality. (Doc. 105). Because Thomas fails to adequately define the class he seeks to certify, the Court again lacks the information it needs to decide if the putative class members' claims "depend upon a common contention." *Wal-Mart*, 564 U.S. at 350.

### 3. Typicality

Rule 23(a)(3) requires that the claims of the class representative be "typical" of the claims of the class. The "typicality inquiry rests 'less on the relative strengths of the named and unnamed plaintiffs' cases than on the similarity of legal and remedial theories behind their claims.'" *Ibe*, 836 F.3d at 528–529 (quoting *Jenkins v. Raymark Indus. Inc.*, 782 F.2d 468, 472 (5th Cir. 1986)).

Thomas again fails to allege facts sufficient to satisfy Rule 23(a)(3)'s typicality requirement. (Doc. 105). The Court cannot decide if Thomas's claims are "typical" of the claims of the proposed class because Thomas has inadequately defined the proposed class. (*Id.*).

---

[11] The Court finds troubling Thomas's citation to a pre-*Wal-Mart* decision interpreting the commonality requirement. (Doc. 120 at p. 6) (citing *Jenkins v. Raymark Indus., Inc.*, 782 F.2d 468, 472 (5th Cir. 1986)). Because *Wal-Mart* "heightened the standards for establishing commonality under Rule 23(a)(2)," pre-*Wal-Mart* decisions interpreting the commonality requirement are inapt. *M.D. ex rel. Stukenberg v. Perry*, 675 F.3d 832, 839 (5th Cir. 2012).

### 4. Adequacy

Rule 23(a)(4) requires that the class representatives "fairly and adequately protect the interests of the class." "This standard 'requires the class representative to possess a sufficient level of knowledge and understanding to be capable of controlling or prosecuting the litigation.'" *Ibe*, 836 F.3d at 529 (quoting *Berger v. Compaq Comput. Corp.*, 257 F.3d 475, 482–483 (5th Cir. 2001)).

Thomas again fails to allege facts sufficient to satisfy Rule 23(a)(4)'s adequacy requirement. (Doc. 105). His failure to properly define the proposed class makes it impossible for the Court to decide if Thomas can "fairly and adequately protect" class-members' interests.

\* \* \*

Thomas failed to cure the deficiencies the Court identified in its Ruling and Order. (Doc. 104). He again fails to allege facts sufficient to satisfy the "threshold requirements" of Rule 23(a). Because he fails to allege facts sufficient to satisfy Rule 23(a), the Court need not consider Rule 23(b). The Court grants Wallace, Rush, Schmidt's and D&A Enterprises' motions and strikes all class-action allegations from Thomas's fourth amended complaint. This wage-and-hour dispute will not proceed as a class action.

## IV. CONCLUSION

Accordingly,

**IT IS ORDERED** that the **Motions for Partial Dismissal (Docs. 112, 115)** are **GRANTED IN PART** and **DENIED IN PART**, as follows: Thomas's collective-action claims are **DISMISSED WITH PREJUDICE**; Thomas's fraud claims are **DISMISSED WITH PREJUDICE**; Thomas's negligence claim against D&A Enterprises is **DISMISSED WITH PREJUDICE**. The **Motions (Docs. 112, 115)** are otherwise **DENIED**.

**IT IS FURTHER ORDERED** that the **Motions to Strike (Docs. 113, 114)** are **GRANTED**. Thomas's class-action claims are **DISMISSED WITH PREJUDICE**.

Baton Rouge, Louisiana, this 25th day of June, 2019.

_____
JUDGE BRIAN A. JACKSON
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA